UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

CLAY LANDIS RIGGS

VS.

STATE OF LOUISIANA, ET AL.

CIVIL ACTION NO. 20-0080

SECTION P

JUDGE TERRY A. DOUGHTY

MAG. JUDGE KAREN L. HAYES

## REPORT AND RECOMMENDATION

Plaintiff Clay Landis Riggs, a prisoner at Jackson Parish Correctional Center Phase I ("JPCC") proceeding pro se and in forma pauperis, filed the instant proceeding on approximately January 16, 2020, under 42 U.S.C. § 1983. He names the following defendants: State of Louisiana, Jackson Parish Sheriff's Department, Chief of Police Bobby Dillion, Officer Jimmy Dickson, Sheriff Andy Brown, Judge Jimmy C. Teat, Warden Timothy Ducote, Stacy Treadway, District Attorney Yumeaka Washington, and Judge Jennifer W. Clason.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

## Background

Plaintiff claims that, on August 9, 2019, the Chief of the North Hodge Police Department, Bobby Dillion,[2] and Officer Jimmy Dickson unlawfully detained and arrested him for willfully and unlawfully operating an ATV (a "four-wheeler") on a public roadway, fleeing from an officer, and resisting an officer. [doc. # 1, p. 2]. Plaintiff maintains that the detention and arrest were unlawful because he is a "sovereign free man of flesh and blood," because he has not

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

[2] Plaintiff also uses the alternative spelling, "Dillon."

privately "contracted with the corporate State of Louisiana through the Department of Motor Vehicles," and because "statutes and codes only apply to government corporate members and not the sovereign people . . . ." *Id.* at 1, 2, 4.  He alleges further: "citizens are the legal fiction a straw man as defined in the Black Law Dictionary 6th edition, also known as a illegally compelled public office associated with the government issued 'public office,' social security card number or tax identification number . . . [sic]." *Id.* at 2.

Plaintiff claims that Stacy Treadway illegally towed and impounded his four-wheeler following the arrest. *Id.* at 4.

Plaintiff claims that the Jackson Parish Sheriff's Department: "has illegally used [his] private property under the color of law that is illegally used without the written consent of the secured party any use is also theft by fraud . . . [sic]." *Id.* at 5.

Plaintiff claims that, on approximately October 6, 2019, District Judge Jimmy C. Teat erroneously denied Plaintiff's "affidavit of denial of corporate existence." *Id.* at 5-6.  He maintains that Judge Teat lacked jurisdiction to disregard or deny his affidavit. *Id.*  He also faults Judge Teat for overruling his objection to the state court's jurisdiction and for denying his motion to compel the production of certain documents. *Id.*

Plaintiff claims that District Judge Jennifer W. Clason failed to hold an "ad hoc hearing" to establish jurisdiction, tried him without jurisdiction, held him in contempt for invoking his right to remain silent under the Fifth Amendment, sentenced him to a $500.00 fine payable in counterfeit currency, and ordered the clerk of court to withhold his "affidavit for rights to travel" until the day after trial. *Id.* at 7.

Plaintiff claims that District Attorney Yumeaka Washington "willfully and with malice prosecuted" him "without jurisdiction." *Id.*

Plaintiff claims that, at JPCC, Warden Timmy Ducote refuses to "provide any pretrial detainee access to the [JPCC] law library to allow the detainees to effectively prepare their litigation for the higher courts to review." *Id.* at 9.

Plaintiff claims that Warden Ducote "refuses to answer any administrative remedy . . . ." *Id.*

Plaintiff claims that, on approximately December 10, 2019, he was forced to "strip completely naked in front of a video surveillance camera at the front of J Dorm that records to a system DVR . . . ." *Id.* at 10. He was then forced to "turn around on video camera," bend, spread his buttocks, and cough. *Id.* He was humiliated. *Id.* at 11.

Plaintiff claims that the hot box from which he receives food is contaminated because it is used "when the medical department quarantines an ICE detainee." *Id.* at 12. Plaintiff allegedly risks infection because the hot box is not disinfected. *Id.*

Plaintiff claims that, while employees receive a vaccine "to prevent them from contracting illnesses from ICE detainees," the "American People" at JPCC do not receive the vaccine. *Id.* at 12-13. He alleges, therefore, that the American People are at risk of illness. *Id.* at 13.

Plaintiff seeks $1,800,000.00 for his allegedly illegal detention, $10,000,000.00 for mental anguish, and $10,000.00 to repair or replace his four-wheeler and the property in the four-wheeler. *Id.* at 14. He also asks for protection from retaliation for filing this proceeding, as well as an unspecified permanent restraining order against "a federal or state employee[] or any and all federal or state officials." *Id.*

**Law and Analysis**

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3]  See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*).  Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was

committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

### 2. *Heck v. Humphrey*

Under *Heck v. Humphrey*, 512 U.S. 477 (1994), a successful civil rights action that would necessarily imply the invalidity of a plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. Courts assess "whether a claim is temporally and conceptually distinct from the related conviction and sentence." *Smith v. Hood*, 900 F.3d 180, 185 (5th Cir. 2018) (internal quotation marks and quoted source omitted). Courts "ask whether the claims are necessarily inconsistent with the conviction, or whether they can coexist with the conviction or sentence without calling [it] into question." *Id.*

Here, Plaintiff claims that the Chief of the North Hodge Police Department, Bobby Dillion, and Officer Jimmy Dickson unlawfully detained and arrested him for willfully and unlawfully operating a four-wheeler on a public roadway, fleeing from an officer, and resisting an officer. [doc. # 1, p. 2]. Plaintiff also claims that Stacy Treadway illegally towed and impounded his four-wheeler following his arrest. *Id.* at 4. Plaintiff was convicted.[4]

Prevailing on the unlawful stop/detention claim would necessarily imply the invalidity of Plaintiff's conviction(s). Such claims are predicated on a lack of reasonable suspicion and necessarily constitute collateral attacks on a conviction if the conviction is founded on evidence

---

[4] TELEPHONE CALL TO JACKSON PARISH DISTRICT ATTORNEY (May 4, 2020); [doc. # 1, p. 7].

derived from the officer's reasonable suspicion and subsequent stop.  See *Jackson v. Vannoy*, 49 F.3d 175, 176 (5th Cir. 1995) (applying *Heck* to an unlawful vehicle stop clam); *Wallace v. Kato*, 549 U.S. 384, n.5 (2007) ("[A] Fourth Amendment claim can necessarily imply the invalidity of a conviction . . . .") *Agard v. Sanders*, 2006 WL 2128079, at *3 (N.D. Tex. July 31, 2006) (finding that the plaintiff's unlawful traffic stop claim would, if proved, implicate the validity of his guilty plea because the evidence discovered following the stop would be subject to suppression).[5]

Prevailing on the false-arrest claims—and establishing that defendants lacked probable cause to charge Plaintiff—would necessarily imply the invalidity of a conviction because the claims are essentially collateral attacks on the criminal judgment's validity.  *Thomas v. Pohlmann*, 681 F. App'x 401, 406 (5th Cir. 2017) (citing *Cormier v. Lafayette City-Par. Consol. Gov't*, 493 Fed. App'x. 578, 583 (5th Cir. 2012)); *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("[The plaintiff's] proof to establish his false arrest claim, i.e., that there was no probable cause to arrest [for the crime he was convicted of], would demonstrate the invalidity of [the conviction].").[6]

---

[5] See also *Handshaw v. Hilliard*, 2015 WL 5177623, at *4 (S.D. Miss. Sept. 4, 2015) (finding a false arrest claim "*Heck* barred" and reasoning that "if Defendants' stop of Plaintiff, the occurrences surrounding his being taken into custody, and the subsequent search incidental to arrest [which revealed the drugs that] were essential to the criminal charge] were determined unconstitutional . . . , such a holding would cast into doubt or potentially invalidate Plaintiff's drug possession charge."); *Lister v. Perdue*, 2015 WL 864834, at *1 (N.D. Tex. Feb. 27, 2015); *Scallion v. Red River Par.*, 2006 WL 2524159, at *2 (W.D. La. Aug. 25, 2006).

[6] See also *Queen v. Purser*, 109 Fed. App'x. 659 (5th Cir. 2004) (a former inmate's false-arrest claim necessarily challenged whether the evidence, which an officer seized following an allegedly illegal stop, and which led to his subsequent conviction, supplied probable cause for his arrest; thus, the claim was not cognizable absent a showing that the conviction had been invalidated); *Chande v. Moore*, 606 F. App'x 238, 239 (5th Cir. 2015) ("Because a showing that there was no probable cause for the challenged entry, search, seizure, and arrest would call into question the validity of [plaintiff's] resulting conviction for unlawful possession of a controlled

Finally, prevailing on the unlawful impoundment claim would necessarily imply the invalidity of the conviction, considering that the claim is premised on Plaintiff's unlawful stop and arrest claims.  See *Almaguer v. Cty. of Bexar*, 774 F. App'x 900 (5th Cir. 2019) (finding, where the plaintiff alleged that defendants stole "his personal property during an illegal search of his home[,]" that success "would necessarily imply the invalidity of his conviction."); *Mann v. Denton Cty. Texas*, 364 F. App'x 881, 882 (5th Cir. 2010) (finding, where the plaintiff claimed that officials deprived him of property seized when he was arrested, that *Heck* barred the claim).

Accordingly, Plaintiff may not seek relief for these claims and requests for relief until his convictions are reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus.[7]

### 3. Jackson Parish Sheriff's Department

Plaintiff claims that the Jackson Parish Sheriff's Department: "has illegally used [his] private property under the color of law that is illegally used without the written consent of the secured party any use is also theft by fraud . . . [sic]."

---

substance with intent to deliver in a drug-free zone," the plaintiff's claims were barred by *Heck*); *Goldston v. City of Monroe ex rel. Monroe Police Dep't*, 621 F. App'x 274 (5th Cir. 2015).

[7] Plaintiff suggests that he is immune from prosecution because he is a "sovereign free man of flesh and blood," because he has not privately "contracted with the corporate State of Louisiana through the Department of Motor Vehicles," and because "statutes and codes only apply to government corporate members and not the sovereign  people . . . ."  Even assuming *Heck* did not apply, these claims are groundless.  Despite the complete lack of success by anyone attempting to rely on it, this 'sovereign-citizen' scheme persists.  The undersigned highlights the obvious irony of turning to this Court to enforce rights which would not exist if, as Plaintiff seems to claim, this Court had no authority to enforce them.  With that said, the undersigned recommends applying *Heck* before reaching the merits of Plaintiff's claims.  See *Walker v. Munsell*, 2007 WL 3377202, at *2 (M.D. La. Oct. 1, 2007), aff'd, 281 F. App'x 388 (5th Cir. 2008) ("As a rule of accrual, the *Heck* doctrine more closely resembles a jurisdictional barrier, because if the claim has not accrued, then the court would not have subject matter jurisdiction over the claim.").

Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ."  Under Louisiana law, an entity must qualify as a "juridical person," which is an "entity to which the law attributes personality, such as a corporation or a partnership."  LA. CIV. CODE art. 24.

Here, Jackson Parish Sheriff's Department does not qualify as a juridical person.  See *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 283 (5th Cir. 2002) ("[A] sheriff's office is not a legal entity capable of being sued . . . .").  Accordingly, the Court should dismiss Plaintiff's claims against this entity.

**4. Judicial Immunity**

Plaintiff claims that, on approximately October 6, 2019, District Judge Jimmy C. Teat erroneously denied Plaintiff's "affidavit of denial of corporate existence."  He maintains that Judge Teat lacked jurisdiction to disregard or deny his affidavit.  He also faults Judge Teat for overruling his objection to the state court's jurisdiction and for denying his motion to compel the production of certain documents.

Plaintiff claims that District Judge Jennifer W. Clason failed to hold an "ad hoc hearing" to establish jurisdiction, tried him without jurisdiction, held him in contempt for invoking his right to remain silent under the Fifth Amendment, sentenced him to a $500.00 fine payable in counterfeit currency, and ordered the clerk of court to withhold his "affidavit for rights to travel" until the day after trial.

"Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages."  *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005).  It "applies even when the judge is accused of acting maliciously and corruptly . . . ."  *Pierson v. Ray*, 386 U.S. 547, 554 (1967).  It "extends to all judicial acts which are not performed in the clear absence of all jurisdiction."

*Kemp ex rel. Kemp v. Perkins*, 324 Fed. App'x. 409, 411 (5th Cir. 2009) (citing *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985)).  There are only two exceptions: (1) non-judicial actions, i.e., actions not taken in the judge's judicial capacity; and (2) lawsuits challenging actions taken in the complete absence of all jurisdiction.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

"In determining whether an action is judicial, a court looks to the nature of the act itself; that is, whether the challenged act is a function normally performed by a judge."  *Id.*  Courts consider four factors: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.  *Ballard*, 413 F.3d at 515.  "These factors are broadly construed in favor of immunity."  *Id.*  "Immunity may be applied even if one or more of these factors is not met."  *Morrison v. Walker*, 704 F. App'x 369, 373 (5th Cir. 2017).

Here, managing or presiding over court proceedings,[8] ruling on objections and motions,[9]

---

[8] See *Bradley v. Salvant*, 2020 WL 1896550, at *1 (5th Cir. Apr. 16, 2020); *Broadway v. Sinex*, 166 F.3d 339 (5th Cir. 1998).

[9] See *Clark v. Lindsay*, 68 F.3d 465 (5th Cir. 1995) (finding a judge immune from a claim that the judge denied the plaintiff's motion for appointment of counsel); *Bailey v. Johnston*, 2012 WL 5207589, at *5 (W.D. La. Oct. 1, 2012), report and recommendation adopted, 2012 WL 5199409 (W.D. La. Oct. 22, 2012) (finding that denying a motion was "clearly" an act that arose out of judges' normal judicial functions); *Diaz v. Tocci*, 2016 WL 3365494, at *6 (W.D. Tex. June 16, 2016) ("[T]he fact plaintiff disagrees with the rulings made by his state trial court judges does not, standing alone, establish those rulings were taken in a complete absence of all jurisdiction or that those judges were acting outside the scope of their official judicial duties when they made the rulings adverse to plaintiff.").

sentencing defendants,[10] holding litigants in contempt,[11] and scheduling hearings[12] are all acts normally performed by a judge.  Moreover, Plaintiff does not allege that either judge acted outside of the courtroom or chambers.  Likewise, Plaintiff's claims clearly "center around" proceedings before the judges, and nothing indicates that the alleged acts arose outside of visits to the judges in their official capacities.[13]

Plaintiff does: (1) allege that Judge Teat lacked jurisdiction to disregard or deny his "affidavit of denial of corporate existence"; (2) fault Judge Teat for overruling his objection to the state court's jurisdiction; and (3) claim that Judge Clason tried him without jurisdiction. Absent more, however, these bald allegations are manifestly implausible considering that district judges in Louisiana possess original jurisdiction over all civil and criminal matters.  LA. CONST. art. V, § 16.

---

[10] See *Mackey v. Helfrich*, 442 F. App'x 948, 950 (5th Cir. 2011) ("[I]mposing the suspended sentence and then revoking the suspension were within his judicial functions and within the scope of his jurisdiction."); *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993) (citing with approval an out-of-circuit case recognizing that judges are "immune for actions of arraigning, convicting and sentencing[.]"); *Johnson v. Kegans*, 870 F.2d 992, 997 (5th Cir. 1989); *Sleeman v. Brazoria Cty.*, 78 F.3d 582 (5th Cir. 1996).

[11] See *Morrison v. Walker*, 704 F. App'x 369, 374 (5th Cir. 2017); *Adams v. McIlhany,* 764 F.2d 294, 297 (5th Cir. 1985) (finding "no question" that a state court judge had absolute immunity for imprisoning women on grounds of contempt because these were "judicial acts" even if "wholly motivated by personal malice"); *Nalls v. LaSalle*, 568 F. App'x 303, 306 (5th Cir. 2014); *Harley-Davidson Credit Corp. v. Davis*, 2013-214 (La. App. 3 Cir. 11/6/13), 127 So. 3d 50, 55 ("The trial court has vast discretion in determining whether a party should be held in contempt for disobeying a court order . . . .").

[12] See *Perry v. Dallas Sheriff's Dep't,* 2014 WL 6809192, at *5 (N.D. Tex. Dec. 3, 2014) (finding a judge immune where the plaintiff alleged that judge erred in scheduling proceedings).

[13] See *Morrison*, 704 F. App'x at 374 (finding judicial immunity even where the plaintiff failed to offer any allegations relating to three of the four *Ballard* factors); *Avdeef v. Royal Bank of Scotland, P.L.C.*, 616 F. App'x 665, 674 (5th Cir. 2015) ("Avdeef makes no effort to argue that Judge Chupp's actions were 'nonjudicial' in nature or were taken 'in the complete absence of all jurisdiction,' as required to overcome judicial immunity.").

Accordingly, Judge Clason and Judge Teat are entitled to absolute judicial immunity. The Court should dismiss these claims.[14]

## 5. Prosecutorial Immunity

Plaintiff claims that District Attorney Yumeaka Washington "willfully and with malice prosecuted" him "without jurisdiction."

"Criminal prosecutors . . . enjoy absolute immunity from claims for damages asserted under [42 U.S.C.] § 1983 for actions taken in the presentation of the state's case." *Watson v. Walton*, 68 F.3d 465 (5th Cir. 1995). "[S]tate prosecutors are absolutely immune from § 1983 damages claims based on activities intimately associated with the judicial phase of the criminal process." *Singleton v. Cannizzaro*, 2020 WL 1922377, at *3 (5th Cir. Apr. 21, 2020).

The Court "distinguishes between (1) actions taken 'in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [the prosecutor's] role as an advocate for the State,' and (2) 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'" *Id.* (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). "[C]onduct protected by absolute immunity is not limited only to the act of initiati[ng judicial proceedings] itself and to conduct occurring in the courtroom, but instead includes all actions which occur in the course of [the prosecutor's] role as an advocate of the State." *Id.* (internal quotation marks and quoted sources omitted).

"Absolute immunity is not a rigid, formal doctrine, but attaches to the functions a prosecutor performs." *Moon v. City of El Paso*, 906 F.3d 352, 359 (5th Cir. 2018). The Fifth

---

[14] Below, the Court addresses Plaintiff's request for injunctive relief. *See Chrissy F. by Medley v. Mississippi Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991) ( "Neither absolute nor qualified personal immunity extends to suits for injunctive or declaratory relief under § 1983.").

Circuit has consistently held that the decision of when and whether to file criminal charges clearly falls within the scope of a district attorney's prosecutorial duties protected by absolute prosecutorial immunity.  See *Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009); *Workman v. Calogero*, 174 Fed. App'x. 824, 826 (5th Cir. 2006).

Here, District Attorney Washington is immune from Plaintiff's claim of malicious prosecution.  See *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016) ("Absolute immunity shields prosecutors even when they act maliciously, wantonly, or negligently.").

Under Plaintiff's threadbare allegations, Washington acted only in the course of Washington's role as an advocate for the State.  Accordingly, the Court should dismiss this claim as frivolous and because Plaintiff seeks monetary relief from a defendant immune from such relief.

**6. Request for Injunctive Relief**

Plaintiff seeks an unspecified permanent restraining order against "a federal or state employee[] or any and all federal or state officials."  The undersigned instructed Plaintiff to "clarify the relief he seeks and specify who he seeks each form of relief from[.]"  [doc. # 19, p. 5].  Plaintiff, however, did not heed the undersigned's instruction.

This request for relief is entirely vague and conclusory.   Plaintiff does not specify who or what he seeks to restrain, and he does not couple his request for relief to any plausible claim.  Accordingly, the Court should dismiss this request for relief, including any claim premised on this request.

**7. Standing**

Plaintiff claims that, at JPCC, Warden Timmy Ducote refuses to "provide any pretrial detainee access to the [JPCC] law library to allow the detainees to effectively prepare their litigation for the higher courts to review."

Plaintiff, however, does not allege that *he* suffered harm or that *he* will imminently suffer harm.  Thus, he lacks standing to pursue this claim.  See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (recognizing that, to have standing, a plaintiff must have suffered an injury in fact that is "actual or imminent, not conjectural or hypothetical[.]") (citations and internal quotation marks omitted).[15, 16]

Moreover, persons claiming a deprivation of constitutional rights are required to show a deprivation of their personal rights, as opposed to the rights of others.  *Coon v. Ledbetter*, 780 F.2d 1158, 1159 (5th Cir. 1986); *Barrows v. Jackson*, 346 U.S. 249, 255 (1953) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party."). In *Resendez v. Texas*, 440 F. App'x 305, 306 (5th Cir. 2011), for example, the court held that, "to the extent that [the plaintiff] seeks to raise issues regarding the illegal confinement of other prisoners . . . , he lacks standing to bring those claims."); see *Kennedy v. Dallas Police Dep't*, 2007 WL 30260, at *2 (N.D. Tex. Jan. 4, 2007) (plaintiff may bring a Section 1983 action only

---

[15] See also *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) ("To have standing, a plaintiff must 'present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling.'" (quoting *Davis v. Federal Election Comm'n*, 554 U.S. 724, 733 (2008)); *Thompson v. Scott*, 86 F. App'x 17, 18 (5th Cir. 2004) (holding that, because an inmate alleged no injury from a policy, he had no standing to raise a claim); *Colgrove v. Collins*, 62 F.3d 391 (5th Cir. 1995) (holding that a "speculative claim of injury is insufficient to satisfy Article III's requirements for standing.").

[16] Plaintiff previously alleged that Warden Ducote retaliated and denied him access to the law library.  [doc. # 1, p. 9].  Plaintiff voluntarily dismissed this claim.  [doc. #s 20, 21].

for deprivations he suffered).[17]

In addition, Plaintiff may not act as counsel for other prisoners.  See, e.g., *Wade v. Carrollton–Farmers Branch Indep. Sch. Dist.*, 2009 WL 2058446, at *2 (N.D. Tex. July 14, 2009) ("[I]ndividuals who do not have a law license may not represent other parties even on a next friend basis.").  Parties can represent themselves or they can be represented by an attorney; they cannot be represented by a non-lawyer.  See *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) (citing *Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1308-09 (2d Cir. 1991) (reviewing authority)).

The Court should dismiss these claims.

## 8. Failure to Answer Administrative Remedy Grievances

Plaintiff claims that Warden Ducote "refuses to answer any administrative remedy . . . ."  A plaintiff, however, does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); see *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. 2004) (holding that "claims that the defendants violated . . . constitutional rights by failing to investigate . . . grievances fall short of establishing a federal constitutional claim."); *Geiger*, 404 F.3d at 371.  Accordingly, the Court should dismiss this claim.

---

[17] See also *Gregory v. McKennon*, 430 F. App'x 306, 310 (5th Cir. 2011) (holding that the plaintiff "would lack standing to seek § 1983 damages for violations of other prisoners' rights . . . ."); *Doe ex rel. Doe v. Beaumont Indep. Sch. Dist.*, 173 F.3d 274, 281 (5th Cir. 1999), on reh'g en banc sub nom. *Doe v. Beaumont Indep. Sch. Dist.*, 240 F.3d 462 (5th Cir. 2001) ("[W]hen making a determination of standing[,]" trial courts "are exhorted to consider . . . whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.").

**9. Strip and Cavity Search**

Plaintiff claims that, on approximately December 10, 2019, an unidentified employee forced him to "strip completely naked in front of a video surveillance camera at the front of J Dorm that records to a system DVR . . . ."  [doc. # 1, p. 10].  He was then forced to "turn around on video camera," bend, spread his buttocks, and cough.  *Id.*  He was humiliated.

In his initial pleading, Plaintiff failed to specify a responsible defendant.  Thus, the undersigned instructed Plaintiff to "provide the name of each person (or entity) who allegedly violated his constitutional rights and from whom he seeks relief."  [doc. # 19, p. 5].  Plaintiff, however, did not heed the undersigned's instruction.  The Court should dismiss this claim.

**10. Conditions of Confinement**

Plaintiff claims that the hot box from which he receives food is contaminated because it is used "when the medical department quarantines an ICE detainee."  Plaintiff allegedly risks infection because the hot box is not disinfected.

Plaintiff does not indicate whether he endured this condition of confinement before he was convicted, after he was convicted, or both.  Regardless, Plaintiff does not plead a plausible claim.

To the extent Plaintiff experienced this condition as a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment applies.  It prohibits the punitive confinement of a pretrial detainee because, by definition, the guilt of a detainee has not been adjudicated.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  Courts must "determin[e] whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word[]" or whether the conditions are "but an incident of some other legitimate governmental purpose."  *Bell*, 441 U.S. at 538.  To determine whether the condition is a

punishment, and therefore unconstitutional, courts must ascertain whether the "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective." *Id.* at 539. "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id.*

"'There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.'" *Bell*, 441 U.S. at 539 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). "[T]he fact that [] detention interferes with the detainee's understandable desire to live as comfortably as possible . . . does not convert the conditions or restrictions of detention into 'punishment.'" *Id.* at 537. "Courts must be mindful that [inquiries into whether conditions are arbitrary, purposeless, or punitive] spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility." *Id.* at 539. Courts should, in certain circumstances, "defer to the informed discretion of prison administrators because the realities of running a corrections institution are complex and difficult, courts are ill equipped to deal with these problems, and the management of these facilities is confided to the Executive and Legislative Branches, not to the Judicial Branch." *Id.* at n.2.

Here, the alleged condition is de minimis. See *Mahmoud v. Bowie*, 234 F.3d 29 (5th Cir. 2000) (finding the following conclusional and de minimis: allegations of an unsanitary shower and toilet area, a lack of hygiene items, and unappetizing food); *Carr v. Newcomer*, 2010 WL 331689, at *9 (W.D. La. Jan. 19, 2010) (finding the following de minimis: the presence of black mold in living areas, eating areas, and shower areas, the proximity of food trays to latrines, that

food is served by inmates lacking hair nets and gloves, and that food is served cold).[18]

To the extent Plaintiff experienced this condition as a convicted inmate, the Eighth Amendment applies. "While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of "the minimal civilized measure of life's necessities."[19] *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

---

[18] See also *Billizone v. Jefferson Par. Corr. Ctr.*, 2015 WL 966149, at *8 (E.D. La. Mar. 4, 2015) (dismissing a claim concerning the manner in which food is served because the plaintiff only speculated that the manner could cause harm and, moreover, the "complaints about the condition of the food trays and the food temperature [were], without more, insufficient to state a cognizable claim."); *Wilkerson v. Champagne*, 2003 WL 22872106, at *2 (E.D. La. Nov. 28, 2003) (no constitutional claim when meals served from "old, cracked, dirty food trays" were not always hot); *Jackson v. Griffith*, 1995 WL 21939, at *4-5 (E.D. Tex. Jan. 10, 1995) (dismissing a claim regarding unsanitary food trays resulting from overcrowded conditions), adopted, 1995 WL 313655 (E.D. Tex. Feb. 8, 1995).

[19] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[20]  However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

"[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib*, 138 F.3d at 215.  Nor does it "require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." *McAllister v. Strain*, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009).  Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982).  Jails must only provide reasonably adequate sanitation. *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986).  "[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989).

Here, Plaintiff does not describe an extreme deprivation of health, hygiene, or sanitation. See *Flowers v. Dent*, 21 F.3d 1109 (5th Cir. 1994) (finding no plausible claim where the plaintiff

---

[20] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

alleged that the kitchen facilities were unsanitary, that the "cleaning program was 'irregular and ineffective,'" that inmate workers were not properly trained, and that "food storage shelves were soiled with dirt and rodent droppings . . . ."); *Hodges v. Frasier*, 176 F.3d 479 (5th Cir. 1999) (finding no "clear or obvious error" in the district court's decision "that the possibility that HIV-positive inmates were involved in food preparation did not state a constitutional claim because 'AIDS is not transmitted by casual contact such as food preparation.'").

In addition, while Plaintiff alleges that he was exposed to a risk of harm, he does not plausibly allege that he was exposed to a *substantial* risk of serious harm. The Court should dismiss these claims.

**11. Lack of a Vaccine**

Plaintiff claims that, while employees receive a vaccine "to prevent them from contracting illnesses from ICE detainees," the "American People" at JPCC do not receive the vaccine. *Id.* at 12-13. He alleges, therefore, that the American People are at risk of illness. *Id.* at 13.

The Court should dismiss this claim as vague and conclusory. Plaintiff does not: identify or describe the illness he fears, identify the vaccine, identify a responsible defendant, allege that he requested either the vaccine or other medical care, allege a serious medical need, or describe a substantial risk of serious harm.

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Clay Landis Riggs' claims against Bobby Dillion, Jimmy Dickson, and Stacy Treadway be **DISMISSED WITH PREJUDICE** as frivolous until the *Heck* conditions are met.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims against Judge Jimmy Teat,

Judge Jennifer Clason, and District Attorney Yumeaka Washington be **DISMISSED** as frivolous, for failing to state claims on which relief may be granted, and for seeking monetary relief from defendants immune from such relief.

**IT IS FURTHER RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 4th day of May, 2020.

Karen L. Hayes
United States Magistrate Judge